IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOANNE REHMEYER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PEAKE PLASTICS CORPORATION, et al. | : | NO. 16-5690 |

**MEMORANDUM AND ORDER**

In this products liability action, Plaintiff, Joanne Rehmeyer ("Plaintiff"), asserts claims of negligence, strict liability, and breach of warranty against Model Pattern Company, Inc. ("MP"), Parker-Hannifin Corporation ("Parker"), and Sidener Engineering Company ("Sidener") (collectively, "Defendants"), arising from personal injuries sustained at her workplace in Felton, Pennsylvania. Doc. 1.[1] Presently before the court is Defendant Parker's motion to transfer venue pursuant to 28 U.S.C. § 1404(a), and Plaintiff's opposition thereto. Docs. 46 & 47. For the reasons stated herein, the motion will be denied.

**I. BACKGROUND**

The Complaint alleges that on November 7, 2014, Plaintiff was injured while working on a trim press in the course of her employment with automotive parts maker Key Plastics, when a portion of the trim press disconnected from its cylinder and

---

[1]Two additional defendants are named in the Complaint but have not participated in the litigation. Default has been entered against Defendant Peake Plastics Corporation ("Peake") for its failure to appear or otherwise defend this action, and Plaintiff's motion for default judgment remains pending. Docs. 35 & 36. Similarly, Defendant Autoform, Inc. ("Autoform"), has not appeared or otherwise defended this action.

descended, causing hand injuries. Complaint, Doc. 1-2 ("Complaint") ¶ 47.[2] Plaintiff is a resident of Shrewsbury, Pennsylvania, and her workplace injury occurred in Felton, Pennsylvania -- both in York County -- and she received post-injury medical care from a variety of emergency personnel and medical providers located in York County. Id. ¶¶ 1, 7; Plaintiff's Initial Disclosures, Doc. 46-8 ("Pl.'s Initial Disclosures"). York County is located in the Middle District of Pennsylvania. 28 U.S.C. § 118(b).

On October 21, 2016, Plaintiff initiated this products liability lawsuit in the Philadelphia Court of Common Pleas. Philadelphia is located in this district, the Eastern District of Pennsylvania. 28 U.S.C. § 118(a). On October 25, 2016, Defendant Parker filed a notice of removal to the United States District Court for the Middle District of Pennsylvania, where it was docketed at Case No. 1:16-CV-2155, and assigned to the Honorable William W. Caldwell.[3] Doc. 1-1; Doc. 47 Exh. A. Shortly thereafter Parker notified Judge Caldwell that the matter was improperly removed to the Middle District, and by Order dated October 31, 2016, Judge Caldwell determined that the matter should have been removed to this district pursuant to 28 U.S.C. § 1441(a), and therefore transferred it here. <u>Rehmeyer v. Peake Plastics Corp.</u>, Case No. 1:16-CV-2155, Order

---

[2]The Complaint is also attached as Exhibit A to Parker's motion (Doc. 46-5).

[3]Parker based the removal on diversity jurisdiction under 28 U.S.C. § 1332(a), alleging the parties' citizenship in: Plaintiff – Pennsylvania; Parker – Ohio; MP – Michigan; Peake – Delaware; Autoform – Michigan and/or North Carolina; and Sidener – Indiana. Doc. 1 ¶¶ 9-15.

(M.D. Pa. Oct. 31, 2016).[4] The matter was assigned to the Honorable Harvey Bartle, III. Judge Bartle denied Plaintiff's motion to remand, concluding that Judge Caldwell had properly transferred rather than remanded the matter following the improper removal. Docs. 21 & 22. The parties subsequently consented to my jurisdiction on March 3, 2017. Doc. 39.

On April 12, 2017, Defendant Parker filed the present motion to transfer venue pursuant to 28 U.S.C. § 1404(a), arguing that the convenience of the parties and witnesses, and the interest of justice, weigh in favor of transferring the case back to the Middle District. Doc. 46. In response, Plaintiff argues that none of the relevant factors used in determining whether transfer is warranted under section 1404(a) favor transfer to the Middle District. Doc. 47. The other defendants have neither sought to join, nor opposed, Parker's motion.

For purposes of the present motion, and given the nature of this case, the primary pertinent facts are the location of potential trial witnesses and exhibits. Most of these facts may be gleaned from the pleadings and the parties' initial disclosures, and they are not disputed unless otherwise noted.

As stated above, Plaintiff is a resident of Shrewsbury in York County, Pennsylvania, and both her place of employment where the injury occurred and the

---

[4]Section 1441(a) states that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States . . . embracing the place where such action is pending." 28 U.S.C. 1441(a). Judge Caldwell's transfer order constitutes Doc. 1 on the Eastern District docket, at Civil Action Number 16-5690, and is attached to Plaintiff's response to the present motion at Doc. 47 Exh. B.

medical facilities where she received treatment are located in York County. Complaint ¶¶ 1, 7; Pl.'s Initial Disclosures at 2-3. Defendant MP's principal place of business in Michigan, Defendant Parker's principal place of business is in Ohio, and Defendant Sidener's principal place of business is in Indiana. Complaint ¶¶ 4-6.[5] According to the Complaint, MP is in the business of designing, manufacturing and supplying and/or selling trim dies, including the trim die issued in the trim press at issue ("subject trim press"); Parker is in the business of designing, manufacturing, and selling hydraulic cylinders, including the cylinder at issue ("subject cylinder"); and Sidener designed, manufactured, and sold the subject cylinder to Plaintiff's employer, Key Plastics. Id. ¶¶ 9-12.

According to an incident report prepared by Key Plastics, their personnel made changes to the subject trim press during the summer of 2014, to change the mold/die being used, see Incident Report, Doc. 46 Exh. G ("Incident Report"), and this may have altered the height of the safety stops on the subject trim press. According to Plaintiff's Initial Disclosures, individuals with relevant knowledge include Plaintiff's co-workers at Key Plastics, all of whom live in York County, Pennsylvania. See Incident Report; Pl.'s Initial Disclosures. The subject trim press is stored at a facility in Loganville, Pennsylvania, which is also located in York County, where on March 28, 2017, it was inspected by counsel, expert witnesses and company representatives. See Inspection

---

[5]The Complaint also alleges that each defendant regularly does business in Philadelphia. Complaint ¶¶ 4 (MP), 5 (Parker), & 6 (Sidener).

Sign-in Sheet, Doc. 46 Exh. K.  A further inspection of the subject trim press is anticipated.  Doc. 46 at 5 n.19 (ECF pagination).

According to Sidener's Initial Disclosures, individuals with relevant information about the subject cylinder include its own employees who work in the state of Indiana, and other individuals located at Key Plastics' headquarters located in Michigan.  See Sidener Initial Disclosures, Doc. 47 Exh. D.[6]  Similarly, MP employees identified as having relevant information work in Michigan, Oregon, Indiana, and/or Ohio.  See Doc. 47 Exhs. E-G; MP Initial Disclosures, Doc. 47 Exh. I.[7]  Parker did not identify any individuals in its initial disclosures, but notes that Atlas Cylinders of Des Plaines, Illinois, is a potential third-party source of relevant and discoverable information.  See Doc. 47 Exh. J.

The parties have not provided any affidavits or statements indicating that any potential witnesses would be unable to attend trial in either Harrisburg in the Middle District, or Philadelphia in the Eastern District.[8]

---

[6]Sidener also identifies Dees Fluid Power, a company based in Pottstown, Pennsylvania, as having relevant information.  See Doc. 47 Exhs. D & H.  Pottstown is located in the Eastern District of Pennsylvania.

[7]According to Plaintiff, Defendant MP has two locations – in Byron Center, Michigan, and Cookeville, Tennessee.  See Doc. 47 at 12 (ECF pagination).

[8]No party has challenged whether venue is proper in the Eastern District in the first instance, and because venue is a waivable defense, I will not address this question.

## II.     DISCUSSION

Parker seeks a change of venue pursuant to 28 U.S.C. § 1404(a), which states:

> (a)  For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a).  Where, as here, all parties do not consent to transfer of venue, a defendant moving for transfer bears the burden of demonstrating that (1) the case could have been brought initially in the proposed transferee forum, (2) the proposed transfer will be more convenient for the parties and witnesses, and (3) the proposed transfer will be in the interest of justice.  Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995); Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970).  The section 1404(a) analysis is "flexible and individualized," and therefore the court has broad discretion in deciding a motion for transfer of venue.  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988).

Here, Plaintiff could have brought this action in the Middle District of Pennsylvania because she lives there, the workplace injury giving rise to this action occurred there, and Plaintiff's medical treatment occurred there as well.  See Complaint ¶¶ 1, 7; Doc. 46-8.  Accordingly, Parker satisfies the first requirement for change of venue.

The second and third requirements for change of venue require the court to weigh several private and public interest factors to determine whether transfer is appropriate.  Jumara, 33 F.3d at 879-80.  These factors include "(1) the plaintiff's choice of forum;

(2) the defendant's preferred forum; (3) the place where the claim arose; (4) the relative ease of access to the sources of proof; (5) the convenience of the parties in light of their relative financial status and physical location; (6) the availability of compulsory process for the attendance of witnesses; (7) the convenience of the witnesses; (8) the practice problems that make trial of a case expensive and inefficient; and (9) 'public interest' factors, such as congestion of court dockets and the relationship of the jury and the community to the underlying districts." Bouldin v. Drudge, No. 17-0089, 2017 WL 590266 at *2 (E.D. Pa. Feb. 14, 2017) (Savage, J.) (quoting Jumara, 33 F.3d at 879-80).

The first factor, plaintiff's choice of forum, typically receives "paramount importance." Bouldin, 2017 WL 590266 at *2 (quoting Shutte, 431 F.2d at 25). However, the plaintiff's choice of forum receives less deference where he or she does not live in the forum and none of the operative facts occurred there. Id. (citing Buckeye Pennsauken Terminal LLC v. Dominque Trading Corp., 150 F. Supp.3d 501, 509 (E.D. Pa. 2015)).[9] Here, Plaintiff seeks to litigate this case in the Eastern District of Pennsylvania, but resides in the Middle District of Pennsylvania, and her workplace injury and medical treatment occurred in that district. In the absence of any significant connection to the Eastern District, Plaintiff's choice of forum is not entitled to the high deference it is typically accorded. As a result, although this factor weighs in Plaintiff's favor, it is not entitled to special deference under the circumstances presented here.

---

[9]In arguing that a plaintiff's choice of forum is entitled to heightened deference regardless of where the plaintiff resides, I note that Plaintiff relies on older cases from this jurisdiction, as well as district court cases outside the Third Circuit. See Doc. 47 at 19-20 (ECF pagination).

The second factor is the defendant's choice of forum. Here, moving Defendant Parker prefers the Middle District for the reasons identified in its motion, including that the injury occurred in York County, Plaintiff's medical treatment occurred in York County, and Plaintiff and many of the witnesses reside in York County. See Doc. 46-2 at 7-10. Thus, Parker's choice of forum favors transfer. Nevertheless, as Parker itself is not located in the Middle District, nor are any of its witnesses, I likewise do not weigh its choice especially heavily.

The third factor is where the claim arose. Defendant Parker argues that Plaintiff's injury occurred in York County, Pennsylvania, implying that the claim therefore arose in the Middle District. Doc. 46-2 at 8. Plaintiff counters that "the operative facts in this products liability case are actually spread throughout numerous states," arguing that because Defendants Parker and Sidener made cylinder design decisions in Indiana and Ohio, and because the trim die at issue was manufactured by Defendant MP in Michigan, "there is no 'ideal' forum that fully encompasses" this cause of action. Doc. 47 at 19 (ECF pagination). There is no dispute that Plaintiff was injured as a result of the November 7, 2014, workplace incident at Key Plastics in Felton, Pennsylvania, which is located in the Middle District, and that no design or manufacturing of the allegedly defective product occurred in the Eastern District. On the other hand, this is not a personal injury case arising from a slip and fall or defect in real property located in a specific location, but rather from an alleged defective product designed and manufactured in perhaps multiple locations in jurisdictions outside Pennsylvania. Therefore, although

8

this factor weighs in favor of transfer due to the location of Plaintiff's workplace injury, it does so only marginally.

The fourth factor is the relative ease of access to the sources of proof. This factor should only be considered to the extent some information could not be produced in one of the forums at issue. Lomanno v. Black, 285 F. Supp.2d 637, 647 (E.D. Pa. 2003). Although Plaintiff's work injury and medical care occurred in the Middle District, the pertinent medical records are (or will be) in the possession of counsel, and there is no reason given, nor is one apparent, as to why a hardship or undue burden exists in obtaining them. Additionally, it is typical for medical professionals to testify via previously-recorded video deposition. The subject trim press itself has already been moved from its original location and could presumably be transported to Philadelphia for trial in the Eastern District as easily as it could be moved to Harrisburg for trial in the Middle District. As a result, this factor is neutral.

The fifth factor is the convenience of the parties. Defendant Parker argues that the Middle District could be more convenient for the reasons already cited, specifically because Plaintiff's workplace injury and medical treatment occurred in that district, and the subject trim press is located there. Ironically, although Plaintiff lives in the Middle District, Plaintiff disagrees. Instead, Plaintiff argues that Defendants never entered or performed any work on the subject press in either the Middle or Eastern Districts, and that corporate designees and important fact witnesses involved with the design, manufacture, and sale of the subject products are all located out-of-state and would be significantly inconvenienced by having to travel to the Middle District rather than the

9

Eastern District. Doc. 47 at 16-17 (ECF pagination). For these individuals -- identified as residing and/or working in Michigan, Oregon, Indiana, Illinois and/or Ohio, and thus from locations requiring air travel -- Plaintiff correctly notes that travel to and from Philadelphia is significantly easier than travel to and from Harrisburg or any other city in the Middle District. As a result, this factor weighs against transfer.

The sixth factor is the compulsory process for the attendance of witnesses. Defendant Parker does not off any argument with regard to this factor. As previously noted, none of the potential witnesses in this case have asserted that they are unwilling to participate in a trial in the Eastern District. More importantly, even if the Key Plastics employees identified as potential witnesses were unwilling to testify in Philadelphia, they would be within range to be subpoenaed because Key Plastics' York County place of business is within 100 miles of Philadelphia. See Fed. R. Civ. P. 45(c)(1)(A) (permitting individuals to be subpoenaed if they are employed within 100 miles of the federal district court where they are called to testify).[10] Therefore, this factor weighs against transfer.

The seventh factor is the convenience of the non-party witnesses. Although Plaintiff's Initial Disclosures identify non-party witnesses who reside in York Country in the Middle District, the distance between York County and Philadelphia County is not onerous, and such witnesses could travel to and from Philadelphia by road or passenger rail service -- options which are clearly not practical for witnesses located in distant states. To the extent Parker argues that a more involved re-inspection of the subject trim

---

[10]A search using Google Maps shows that the driving distance from the Key Plastics facility in Felton, Pennsylvania, to the United States Courthouse in Philadelphia is 97.2 miles. See Doc. 47 Exh. K.

press is anticipated, and that the re-inspection will occur in the Middle District, see Doc. 46-2 at 6 & n.19, Plaintiff correctly counters that it is common for counsel to travel to other venues to view locations or items which are the subject of litigation elsewhere. See Doc. 47 at 7 (ECF pagination). Additionally, as previously noted, medical professionals usually testify via previously-recorded video deposition, and there is no indication that they or any other non-party witnesses would be unwilling or unable to testify in the Eastern District. Accordingly, I conclude that this factor weights against transfer.

The eighth factor is practical problems that make trial of a case expensive and inefficient. Defendant Parker has identified no practical problems that would make trial easier, expeditious, or less expensive in the Middle District as opposed to the Eastern District, except arguably those which have been discussed above. To the extent Parker argues that the subject trim press itself presents such a problem, the fact that it has already been moved from its original location indicates that it could presumably be transported to Philadelphia for trial as easily as it could be moved to Harrisburg for trial. Therefore, this factor is either neutral or weighs somewhat against transferring this case to the Middle District.

The last consideration is "public interest" factors, such as the imposition of jury service on persons with no connection to the dispute, the public's interest in avoiding duplicative litigation, and congestion of court dockets. See, e.g., Bouldin, 2017 WL 590266 at *3 (public interest favors transfer from Eastern District where the district has "no interest" in the case); Panitch v. Quaker Oats Co., 16-4586, 2017 WL 1333285, at *7 (E.D. Pa. Apr. 5, 2017) (Diamond, J.) ("To permit a situation in which two cases

involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness or time, energy and money that § 1404(a) was designed to prevent.") (quoting Cont'l Grain Co. v. Barge FBL-585, 364 U.S. 19, 26 (1960)). Here, there is no danger of duplicative litigation because this is the only action brought by Plaintiff to recover damages from her November 7, 2014 workplace injury. In addition, given the nature of the case and the fact that Defendants' industrial products are used in facilities nationwide, it cannot be said that the Eastern District has no interest in the litigation. Finally, Parker's argument that transfer would ease the "already crowded docket" of the Eastern District, see Doc. 46-2 at 10, has previously been rejected by this court. See Hamilton v. Nochimson, Civ. Action No. 09-cv-2196, 2009 WL 2195138, at *4 n.1 (E.D. Pa. July 21, 2009) (O'Neill, J.) (Eastern District of Pennsylvania has high caseload because it handles "large number of multi-district litigations," and "accepted measure of court congestion is the median time from filing to disposition of civil cases"). Based on the median time from filing to disposition, as of 2016 the Eastern District is less congested (5-month median time) than the Middle District (9-month median time). See Admin. Off. Of the U.S. Courts, Annual Report of the Director, Table C-5 (2016). Accordingly, the public interest factors weigh in favor of not transferring this case to the Middle District.

### III. CONCLUSION

Upon a careful weighing of the factors for and against transfer of venue, I conclude that Defendant Parker has not met its burden and that private and public interest factors of convenience and fairness weigh in favor of trying this case in the Eastern District of Pennsylvania. Therefore, in the interest of justice, the motion to transfer venue pursuant to 28 U.S.C. § 1404(a) will be denied. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOANNE REHMEYER | : | CIVIL ACTION |
| v. | : | |
| PEAKE PLASTICS CORPORATION, et al. | : | NO. 16-5690 |

## **ORDER**

AND NOW, this           day of May 2017, upon consideration of Defendant Parker-Hannifin Corporation's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Doc. 46), and Plaintiff's response (Doc. 47), IT IS HEREBY ORDERED that the motion is DENIED.

BY THE COURT:

_____
ELIZABETH T. HEY, U.S.M.J.